# SUPREME COURT OF THE UNITED STATES

JUNE MEDICAL SERVICES, L.L.C., ET AL.
*v.* REBEKAH GEE, SECRETARY, LOUISIANA
DEPARTMENT OF HEALTH AND HOSPITALS

ON APPLICATION FOR STAY

No. 18A774   Decided February 7, 2019

The application for a stay presented to JUSTICE ALITO and by him referred to the Court is granted, and the mandate of the United States Court of Appeals for the Fifth Circuit in case No. 17-30397 is stayed pending the timely filing and disposition of a petition for a writ of certiorari. Should the petition for a writ of certiorari be denied, this stay shall terminate automatically. In the event the petition for a writ of certiorari is granted, the stay shall terminate upon the sending down of the judgment of this Court.

JUSTICE THOMAS, JUSTICE ALITO, JUSTICE GORSUCH, and JUSTICE KAVANAUGH would deny the application.

JUSTICE KAVANAUGH, dissenting from grant of application for stay.

I respectfully dissent from the Court's stay order. In this case, the plaintiffs raised a pre-enforcement facial challenge to Louisiana's new admitting-privileges requirement for doctors who perform abortions. The Fifth Circuit rejected the plaintiffs' facial challenge based on that court's factual prediction that the new law would not affect the availability of abortions from, as relevant here, the four doctors who currently perform abortions at Louisiana's three abortion clinics. In particular, the Fifth Circuit determined that the four doctors likely could obtain admitting privileges. The plaintiffs seek a stay of the Fifth Circuit's mandate. They argue that the Fifth Circuit's factual prediction is inaccurate because, according to

the plaintiffs, three of those four doctors will not be able to obtain admitting privileges. As I explain below, even without a stay, the status quo will be effectively preserved for all parties during the State's 45-day regulatory transition period. I would deny the stay without prejudice to the plaintiffs' ability to bring a later as-applied complaint and motion for preliminary injunction at the conclusion of the 45-day regulatory transition period if the Fifth Circuit's factual prediction about the doctors' ability to obtain admitting privileges proves to be inaccurate.

Louisiana's new law requires doctors who perform abortions to have admitting privileges at a nearby hospital. The question presented to us at this time is whether the law imposes an undue burden under our decision in *Whole Woman's Health* v. *Hellerstedt*, 579 U. S. ___ (2016). All parties, including the State of Louisiana, agree that *Whole Woman's Health* is the governing precedent for purposes of this stay application. I therefore will analyze the stay application under that precedent.

Louisiana has three clinics that currently provide abortions. As relevant here, four doctors perform abortions at those three clinics. One of those four doctors has admitting privileges at a nearby hospital, as required by the new law. The question is whether the other three doctors—Doe 2, Doe 5, and Doe 6—can obtain the necessary admitting privileges. If they can, then the three clinics could continue providing abortions. And if so, then the new law would not impose an undue burden for purposes of *Whole Woman's Health*. By contrast, if the three doctors cannot obtain admitting privileges, then one or two of the three clinics would not be able to continue providing abortions. If so, then even the State acknowledges that the new law might be deemed to impose an undue burden for purposes of *Whole Woman's Health*.

The law has not yet taken effect, so the case comes to us in the context of a pre-enforcement facial challenge. That

means that the parties have offered, in essence, competing *predictions* about whether those three doctors can obtain admitting privileges. The District Court concluded that the three doctors likely could not obtain admitting privileges. The District Court therefore enjoined the law. The Court of Appeals for the Fifth Circuit concluded that the three doctors likely could obtain admitting privileges. The Fifth Circuit therefore lifted the injunction.

Before us, the case largely turns on the intensely factual question whether the three doctors—Doe 2, Doe 5, and Doe 6—can obtain admitting privileges. If we denied the stay, that question could be readily and quickly answered without disturbing the status quo or causing harm to the parties or the affected women, and without this Court's further involvement at this time. That is because the State's regulation provides that there will be a 45-day regulatory transition period before the new law is applied. The State represents, moreover, that Louisiana will not "move aggressively to enforce the challenged law" during the transition period, Objection to Emergency Application for Stay 2, and further represents that abortion providers will not "immediately be forced to cease operations," *id.*, at 25. Louisiana's regulation together with its express representations to this Court establish that even without admitting privileges, these three doctors (Doe 2, Doe 5, and Doe 6) could lawfully continue to perform abortions at the clinics during the 45-day transition period. Furthermore, during the 45-day transition period, both the doctors and the relevant hospitals could act expeditiously and in good faith to reach a definitive conclusion about whether those three doctors can obtain admitting privileges.

If the doctors, after good-faith efforts during the 45-day period, cannot obtain admitting privileges, then the Fifth Circuit's factual predictions, which were made in the context of a pre-enforcement facial challenge, could turn out to be inaccurate as applied. And if that turns out to be

the case, then even the State acknowledges that the law as applied might be deemed to impose an undue burden for purposes of *Whole Woman's Health*. In that circumstance, the plaintiffs could file an as-applied complaint or motion for preliminary injunction in the District Court, and the District Court could consider under *Whole Woman's Health* whether to enter a preliminary or permanent injunction.

On the other hand, if the doctors can obtain necessary admitting privileges during the 45-day transition period, then the doctors could continue performing abortions at the three clinics both during and after the 45-day transition period, as envisioned and predicted by the Fifth Circuit. And in that circumstance, the Louisiana law as applied would not impose an undue burden under *Whole Woman's Health*.

In order to resolve the factual uncertainties presented in the stay application about the three doctors' ability to obtain admitting privileges, I would deny the stay without prejudice to the plaintiffs' ability to bring a later as-applied complaint and motion for preliminary injunction at the conclusion of the 45-day regulatory transition period. The Court adopts an approach—granting the stay and presumably then granting certiorari for plenary review next Term of the plaintiffs' pre-enforcement facial challenge—that will take far longer and be no more beneficial than the approach suggested here. I respectfully dissent from the Court's stay order.